☆FILED☆ ~ORIGINAL~

1  Brian Burke, *Pro Per*
2  145 EAST 23^(RD) STREET APT. 4R
   NEW YORK, NY 10010
3  646-434-8513
4  BRIANTBURKE@GMAIL.COM

2015 JUN 26  PM 8: 27

CLERK
U.S. DISTRICT COURT

ORIGINAL

5

6           UNITED STATES DISTRICT COURT

7      FOR THE EASTERN DISTRICT OF NEW YORK

8

9  BRIAN BURKE, Plaintiff,    ) Case# 15-cv-1481(ENV)(LB)
                              )
10                            )
11 vs.                        ) AMENDED COMPLAINT AND
                              ) AFFIRMATION
12 NEW YORK CITY TRANSIT      ) JURY TRIAL DEMAND
                              )
13                            )
   AUTHORITY, NYP Holdings,   )
14                            )
15 Inc., KRISTEN NOLAN,esq.,

16
   LEONARD AKSELROD, KATHIANNE
17
18 BONIELLO, JOHN/JANE DOE, *ET*

19 *AL.*,      Defendants

20 _____

21

22           **INTRODUCTION**

23
       I declare, certify, verify, and state under penalty
24
25 of perjury that the foregoing is true and correct.

26 Executed on Friday June 26, 2015

27

28

                AMENDED COMPLAINT AND AFFIRMATION

                    JURY TRIAL DEMAND - 1

This is an action to remedy the rights of Brian Burke under 18 U.S.C 1964, 42 U.S.C 1983, 115 Stat 272, NYPL part 4 title X sec 460-460.8, Chapter 96, 18 U.S.C. § 1961-1968, Pain and Suffering, Joint & Several Liability, Vicarious Liability, Respondeat Superior, Law of Agency, Tortious Interference With Prospective Economic Advantage, Fraud, Wage Theft, Defamation, Libel, Slander, Malicious Falsehood, Intentional Infliction of Emotional Distress, Perjury, Subornation of Perjury, Obstruction of Justice, Jury Tampering, Covenant of Good Faith and Fair Dealing, Theft of Honest Services, N.Y. ADC. LAW § 8-603, U.S.C. Title 29, Chapter 7, subchapter IV § 185, Title VII 42 U.S.C. §§ 2000e, U.S.C Title 42 Chapter 29 § 1981, *42 U.S.C. §§ 121111-12117, 42 U.S.C. §§ 121311-121655, 42 U.S.C. §§ 121811-121899, 42 U.S.C. §§ 12201-12213, U.S.C. Title 6 Chapter 4 Subchapter III§ 1142, 29 U.S.C. § 621- § 634,* **Article V, Section 6 of the New York State Constitution, Amendment I to the United States Constitution**, New York State CVS-Civil Service,

and all other applicable New York State or Federal Statutes or common law, subject to amendment. Malicious, concerted, terroristic, dangerous, unlawful activity, orchestrated by the NYCTA Department of Law, resulting in a hostile workplace and a PTSD, mixed anxiety depression disorder diagnosis, for reasons primarily of retaliation, makes this suit necessary.

## JURISDICTION & VENUE

This Court has Jurisdiction pursuant to the following Statutes; 28 U.S.C. *§ 1331, 28 U.S.C. § 1343* and *28 U.S.C. § 1367*. Venue is appropriate in this judicial district as the events that gave rise to this Complaint occurred in this district.

## JURY DEMAND

A jury trial is demanded under the Seventh Amendment to the Constitution of the United States and Fed. R. Civ. P. 38.

## REFERAL TO MAGISTRATE

Petitioner agrees to referral to Federal Magistrate Judge Lois Bloom by presiding District Judge Eric N.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 3

Vitaliano, for all purposes, in the interest of judicial economy, see attached. If any defendants disagree, Petitioner understands non-dispositive motions will be decided by Judge Bloom as well as a report and recommendation on dispositive motions.

## **PARTIES**

Plaintiff is a 53 year old citizen of the United States, 14 year Train Operator for the New York City Transit Authority (hereon in NYCTA). He has resided in New York County, New York for over a quarter century, has never been arrested or charged with any crime and has been regularly and randomly drug and alcohol tested as recently as 03/11/2015.

### *Qui facit per alium facit per se*

NYCTA is the employer at issue. All individuals, other than Kathianne Boneillo, yet known and unknown, involved in the unlawful concerted adverse job actions work for the same. NYCTA is a public entity pursuant to 42 U.S.C *§12131, etc.* NYCTA resides at 130 Livingston

Street, Brooklyn New York, within this Court's

Jurisdiction. NYCTA receives federal funds.

NYP Holdings, Inc., doing business as New York

Post, published a maliciously false, defamatory,

libelous, slanderous, damaging hit piece on Sunday,

March 29, 2015 about this case, and others, in order to

potentially obstruct justice and falsely influence a

prospective jury and otherwise harm Petitioner.

Kathianne Boneillo was credited as the Author, but, on

information and belief, Kristen Nolan was the actual

author.

### DEPRAVATION OF RIGHTS UNDER COLOR OF LAW

1.  On February 26, 2001, Petitioner was hired
    as a safety sensitive Train Operator by the
    New York City Transit Authority, off an open
    competitive civil service list, scoring 97.5
    out of 100 and passing all requirements.
    Plaintiff noticed the NYCTA medical
    department of the pre-existing conditions of
    myopia and photophobia and supplied medical

1    documentation of the same, as per rule[1].

2    Petitioner has been required since to wear

3

4    the correct corrective lenses while

5    operating a train and has done so since

6

7    hiring date.

8    2.    In 2005 Complainant became a Shop Steward

9
     for Transport Workers Union, Local 100 and
10

11   in 2009 was elected a Delegate and appointed

12   a contractual Safety Representative in 2010.

13

14   3.    In 2008 Plaintiff filed U-28203 with the New

15   York State Public Employment Relations Board

16
     against NYCTA, due to unsafe, harassing,
17

18   distracting activity by Train Service

19   Supervisor (hereon in TSS) Lobianco.

20

21

22

23

24   ───────────────────
     [1] Rule 11(o)"Any employee who requires tinted eyeglass
25   lenses for medical reasons, must submit a certificate from
     his/her physician or eye specialist and must report to the
26   Occupational Health Services, with the tinted eyeglasses, and
     must submit to an eye examination." This was complied with in
27   March 2001 by submitting a certificate by the head of the
     Department of Opthalmology at Beth Israel Medical Center, C.
28   Michael Samson, M.D.

                    AMENDED COMPLAINT AND AFFIRMATION

                       JURY TRIAL DEMAND - 6

4.      Approximately once a month TSS Lobianco,

Petitioners assigned TSS[2], would enter the

operating cab and proceed to harass,

threaten, mock, interfere and distract Train

Operator Brian Burke while train was in

motion. This was also reported to Transit

and Federal EEOC.

5.      Ms. Kristen Nolan, esq. was Counsel for the

Authority at the PERB settlement in 2008.

Ms. Nolan became aware of Complainant's

corrective lens requirement at that time.

6.      At the 2008 settlement hearing ALJ Philip

Meier negotiated a written settlement

agreement between NYCTA General Counsel

Martin B. Schnabel, Kristen Nolan and

Complainant. The harassment by TSS Lobianco

ceased.

_____

[2] All hourly workers in Rapid Transit Operations are
assigned to a TSS each pick, i.e. twice yearly and each TSS has
approximately 30 assignees. The assigned TSS performs all
investigations of assignees.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 7

7.      In 2011 in Concourse Yard, Bronx, Petitioner
        was the witness to a confrontation between
        Train Operator Estes, a proud African-
        American Air Force Veteran, and TO Daniel C.
        of Irish-Catholic ethnicity.

8.      Plaintiff was ordered by then Line
        Superintendent O'Toole to write a written
        report on the event.

9.      Various employees suggested Petitioner lie
        and cover-up malfeasance by TO Daniel C.,
        presumably to have Complainant avoid
        harassment, hostility and adverse job
        actions to come, but this was not done. TO
        Daniel C. was forced to retire.

10.     After writing correct EEOC document and
        supporting TO Estes version of events
        adverse job actions in assignments started
        occurring on a daily basis.

11.    For 10 years at that point, Complainant picked the 'extra list'.[3] As retaliation, the Authority started assigning only less senior road jobs to, now senior on the list, TO Burke. A grievance was filed and Complainant was forced to pick off the list.

12.    In August 2012, in order to cease adverse job assignments, Petitioner accepted a promotion to Train Dispatcher.

13.    As Train Dispatcher, Petitioner discovered that he would be getting lower pay than as a Motorman and would be on an illegal 2 year probation[4]. Petition requested as of right voluntary demotion to previous Civil Service title.

---

[3] Specifically extra list north, PM shift. This was done so Petitioner could work more senior jobs, such as yard and switching, that are normally worked by more senior employees.
[4] The NYCTA, in violation of NYS Civil Service Law and promotion letter sent to Complainant, insisted on unlawful two year probation.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 9

14.   Petitioner resumed newly picked B-line road job, which started in Concourse Yard, in December 2012.

15.   On first day back and for the next six months Assistant Train Dispatcher Odums proceeded to harass Complainant at every sign in. Some, but not all, of this harassment was recorded.

16.   All hourly (Train Operators, Conductors, Tower Operators) RTO NYCTA employees are required to read bulletins, memoranda, notices, general orders and transit related news items[5] for the first 15 minutes of every tour, i.e. 'bulletin time', at sign in location where the same are posted.

17.   On first day back ATD Odums denied pay to return a transit radio, while ordering work

---

[5] These would, and did, include the 03/29/15 Post article, also available online at MTA Today, a widely read employee only intranet.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 10

to be performed free and was extremely hostile and harassing.

18.   In 2013 ATD Odums harassment, retaliation and hostility only increased.

19.   Complainant, as a Safety Representative, attempted to and did in fact call Vice President Kevin Harrington of Local 100 to report a grave unsafe condition in Concourse Yard Barn[6]. ATD Odums interrupted call for no legitimate reason and ordered plaintiff to never use transit phones for any purpose[7].

20.   On other occasions ordered Plaintiff to not stand in front of desk to sign in, an impossibility.

---

[6] Complainant, while walking to his train, observed the safety chains that chock the trains in the barn were unpainted, i.e. camouflage, and would, if missed, derail train. This is a violation of Bulletin and wildly unsafe. It was successfully reported and remedied much later.

[7] Petitioner, had recently completed all training for a higher title, Train Dispatcher, and knew ATD Odums had no legal right to order that, nevertheless followed the motto "comply and grieve".

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 11

21. Petitioner was uniquely told he could not use NYCTA microwave by Mr. Odums.

22. Same for NYCTA toaster by ATD Odums.

23. Uniquely ordered not to use NYCTA refrigerator at sign in location, by Mr. Odums.

24. Blocked from talking to Local 100 Tower Operator, in violation of first amendment and "Taylor Law", by Mr. Odums.

25. Told he could not sit in NYCTA chairs when reading Bulletins, etc., by Mr. Odums.

26. On 02/13/2013 (Ash Wednesday) Complainant arrived at work after mass with a cross of ashes on his forehead. ATD Odums made a number of rude and racist comments directed at Petitioner, including comparison with a hindu woman and a rant on Catholics violating his same-sex rights.

27. Blocked from using NYCTA cups to drink water by ATD Odums.

28.    Blocked from being able to drink NYCTA water
       by ATD Odums.

29.    Told his face looked like a woman had a
       yeast discharge on it by ATD Odums.

30.    Other statements too inflammatory to print.

31.    Petitioner filled new PERB (U-32637)and NYS
       Human Rights cases against NYCTA under
       Vicarious Liability Doctrine.

32.    Kristen Nolan, esq. filed three perjurious
       sworn Affidavits purportedly signed by ATD
       Odums.

33.    Petitioner filed a Notice of Claim in 2012
       against the NYCTA.

34.    Ms. Nolan sent a request for a Statutory
       Hearing (deposition) under NY Code 50-h by
       certified letter, as required.

35.    Originally scheduled for September 25, 2012,
       it took place on February 27, 2013 at 1pm.
       Ms. Nolan questioned Complainant for the
       rest of the afternoon and was again made

aware of corrective lens need. No copy of
transcript was to this day given to
Deponent, in violation of NY Code 50-h.

36.    Petitioner, in order to stop brutal
harassment by ATD Odums, was required to,
and did in fact 'pick off' the B line and
picked a job with more cab time and an
otherwise more difficult schedule. That
harassment ended in June 2013 only because
Mr. Odums had no more access to do so.

37.    Appearing at PERB settlement hearing at 55
Hanson Place, in front of ALJ Angela
Blassman in November 2013, Ms. Nolan was
again made aware of petitioners corrective
lens requirements.

38.    After returning to work as a Train Operator
in December 2012, the Authority continued to
deduct dues for the supervisors union for
months.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 14

39.   After returning to TO title the Authority refused to deduct TWU Local 100 dues, in violation of contract, state law and automatic dues check off stipulation/Court Order, for years. This was done to place Complainant in bad standing with Union.

40.   On January 17, 2013, Leonard Akselrod, head of Labor Relations, turned off, without notice, Petitioners employee pass. Nevertheless, Mr. Akselrod ordered Burke to do job without proper means in violation of contract and safety. A 'Safety Dispute Resolution Form' was requested of Mr. Akselrod, who did not comply in violation of Bulletins, NYCTA Rules, etc.. Mr. Akselrod is tasked with enforcing said rules and fires employees daily for less severe violations.

41.   On March 27, 2014 a PERB hearing for U-32637 took place. ATD Odums testified, and it was

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 15

clear, additionally perjured himself. Ms. Nolan was present and again witnessed Plaintiff's corrective lenses requirement.

42. On April 11, 2014 a PERB settlement hearing for a different case not involving Mr. Odums (U-33283) but wherein the Authority refused to recognize Petitioner as a Shop Steward, or acknowledge that the position exists at all, or to allow Petitioner to identify himself as a Shop Steward to Union Members at work during lunch, etc., in violation of 2008 Stipulation, the Taylor Law, etc., took place. Ms. Nolan again represented the Authority.

43. In 2007 Complainant filed an 'et al.' grievance regarding overtime pay for training on regular days off. Grievant prevailed in front of arbitrator Richard

Adelman.[8] This victory cost the Authority approximately $1,000,000.

44.    Petitioner has approximately a dozen grievances the Authority refuses to hear and have been pending for years.

45.    On April 14, 2013, according to testimony by Labor Relations Director Akselrod at a NY WCB hearing, Ms. Nolan received a coincidental epiphany or second sight.[9] She called Mr. Akselrod and the brutal, unsafe harassment of whistleblower Burke rose to an unprecedented level.[10]

---

[8] NYCTA fired Mr. Adelman in 2013 to avoid losing another substantial *et al.* grievance by Burke regarding seniority and bid rights of open yard and switching jobs being worked by rookies in the YX program. This grievance is still pending.
[9] Ms. Nolan was told by Burke on workday prior that the Odums affidavits she submitted, and presumably wrote, were likely suborned. This issue is being investigated by Brooklyn District Attorneys Office, referred by MTA Inspector General.
[10] The specific horrific harassments orchestrated by Defendants Nolan and Akselrod have never occurred in the 100+ prior years of the subways. The presumptive harassment, distraction, interference, hostility of having 5 supervisors serially attack a train operator while operating was considered too dangerous. The WCB transcripts are in possession of the Authority and a discovery request. Transit has not complied with 26(f) conference request or initial disclosures.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 17

46.     Anonymous calls to D line Dispatcher were made to locate Burke.

47.     Mr. Grieves, Burke's assigned TSS, was working on Monday and Tuesday, April 14 and 15, 2014. He was not contacted regarding false malicious 'complaint' by Ms. Nolan,[11]as was procedure and precedent. He would have refused to harass Burke, if directed to do so.

48.     On April 14, 2013, a TSS, unknown to this day, entered Petitioners operating cab without cause after verifying that Burke was in compliance with all rules and regulations from outside the cab.[12]He proceeded to

---

[11] Ms. Nolan's second sight resolved that Burke, a then 13 year Train Operator with a perfect safety record, must be operating trains without wearing the correct required glasses. Ms. Nolan had never seen Petitioner operate but knew of corrective lens requirement and was given copy of certificate years prior. This violation of ADA was the pretext, see **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133 (2000)

[12] There is an 18 page procedure, 'efficiency tests', that are regularly performed to catch unsafe activity. Subway crew are observed outside the cab, from the platform, and if in violation are taken out of service and if not in violation, the

harass, threaten with false write-ups and otherwise evidence extreme hostility and intimidation. Ms. Nolan was aware of Complainants extreme dislike and fear of exactly this behavior due to prior ordeal involving Mr. Lobianco.

49. On the second interval on Monday, April, 14, 2014, a second unknown TSS entered operating cab and performed slightly greater harassment and unsafe activity.

50. On Tuesday, April 15, 2014, Ms. Nolan and Mr. Akselrod, instead of dropping harassment, which at that point failed, doubled up. Burke was found to be in compliance with all safety rules on Monday but that was just a pathetic ADA violating pretext. The hostile harassment should have stopped but was only getting started.

TSS observes the next train. This was not done, as Ms. Nolan's false complaint was pretext for the criminal harassment.

51.     Over the course of the day and on all three
        intervals, three TSSs serially entered cab,
        after verifying that Burke was not violating
        rules, and proceeded to assault, threaten,
        intimidate and harass the whistleblower
        until a panic attack occurred at the end of
        the day.

52.      On April 16, 2014, a day off for Burke to
        attend monthly union meeting, the attached
        letter was sent to Barry Kluger, MTA
        Inspector General, by email and regular
        mail.

53.     On April 17, 2014 Burke reported to work and
        then filed an 'Injury On Duty'(IOD)and
        Safety Dispute Resolution Form as stated in
        letter.

54.     Diagnosis of PTSD by Dr. Xao, Dr. Kuhn, Dr.
        Sherman, as well as mixed anxiety/depression
        disorder ensued. This was caused by the

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 20

concerted activity of Ms. Nolan and Mr. Akselrod.

55.    At first WCB hearing, Mr. Greaves appeared for the Authority, and when the Authority realized Mr. Greaves would not perjure himself, i.e. "play ball", he was dismissed prior to testimony and hearing rescheduled.

56.    At later WCB #G1100520 hearing the three 'Tuesday' TSSs, but for some reason not the Monday 2, testified. Their perjury was clearly coached and suborned.[13] The hearing transcripts are in possession of the Authority. Petitioner cannot afford the various PERB or WCB transcripts or the hiring of counsel due to unlawful withholding of wages and benefits and unlawful concerted activity by defendants.

_____

[13] The Perjury and Subornation of testimony at WCB hearing regarding 2014 injury (G1100520) and false material information by NYCTA from 2015 case (G1278038) are being investigated by NYS Inspector General Catherine Leahy Scott.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 21

57.     The NYCTA withheld 2014 vacation and sick
        pay, in violation of state laws and
        contract. This was later paid after
        grievances and importuning by Union.

58.     The NYCTA withheld '60%' sick pay. This is a
        contractual right of sick pay at 60% of
        normal pay when accumulated sick pay runs
        out. This was the adverse job action by the
        Authority that OSHA was investigating as
        retaliation. The Authority did in fact pay
        this, 6 months late, at OSHA insistence and
        OSHA complaint is now withdraw due to
        compliance.

59.     Complainant was sent a termination letter,
        with the option of reclassification. Despite
        diagnosis caused by the defendants and
        various prescription medication, Petitioner
        agreed to medical reclassification[14] to

---

[14] The NY Post and Ms. Nolan, the cause of the injury and
the need for reclassification, referred to this as a demotion,

AMENDED COMPLAINT AND AFFIRMATION

Station Agent title at higher Train

Operator's pay.

60. Complainant filed instant case, 15-cv-1481, on Friday, March 20, 2015

61. On Monday, March 23, 2015 Burke started fully paid[15] training at NYCT Learning Center, 2125 West 13th Street, Brooklyn, A.K.A. the former Public School 248.

62. On Thursday, March 26, 2015 Ms. Kathianne Boniello emailed and voicemailed Plaintiff requesting information on an article the Post was writing on whistleblowing and the instant case.

63. Early Friday, March 26, 2015 Petitioner phoned Ms. Boniello and answered all questions. She attempted to construe prior litigation in a light least favorable to the

---

which was deliberately false and defamatory. This was not compulsory.

[15] The Authority is required to pay its represented Civil Servants at full pay and benefits for all required training, as per contract. The Authority has chosen to unlawfully and without cause withhold Burke's 2015 pay, sick pay, overtime pay and 60% pay. A grievance was filed and ignored.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 23

subject of the hit piece. Burke pointed out

the successful aspects of that same

litigation.[16]

64.    On Sunday, March 29, 2015, a deliberately

false, malicious, libelous, slanderous,

damaging article was published by the New

York Post. This article was disseminated

online at nypost.com, MTA Today website,

Facebook and printed up and distributed at

PS248 and throughout NYCTA system.

65.    The false defamation refers to complainant

as a "Train Kook", etc.. This defamatory

moniker was employed by unknown employees

within the Brooklyn Learning Center and

online for the remainder of that week and

the article distributed in the lunch room,

---

[16] For example Burke v. Gutierrez, 04-cv-7593, resulted in
Burke becoming a Relator (Federal False Claims Act) in finding a
$500,000+ fraud against the Department of Justice. This case,
14-7077/78, ongoing in DC Circuit may be and additional cause of
NYCTA retaliation, see **CESTRA v. MYLAN, INC. Civil Action No.
14-825** in the WD of Pennsylvania District Court. The 'Taylor
Law' challenge resulted in the International Labor Organization
ruling in favor of the Local.

superintendent's office and throughout the
building, including postings.

66.   On Monday April 6, 2015 developed another
panic attack.[17]A new Injury On Duty (IOD)
form and a new WCB case developed, G1278038.
Burke was treated on April 6, 2015 by Dr.
Hearns of Central Medical Services of
Westrock, and again diagnosed with a panic
attack and PTSD, but caused by the new
injury inflicted over the preceding week by
defendants.

67.   The Post article is false and defamatory on
virtually every part, other than the name
and age of Plaintiff. The article was
submitted as exhibit H in Declaration In
Support of Motion To Dismiss by Defendant
NYCTA.

---

[17] Petitioner never in the previous 52 years evidenced any
negative mental manifestations, or was ever treated for any
mental issue. No previous panic attack, PTSD or disorder
diagnosis occurred.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 25

68.     The article headline distributed throughout the NYCTA states 'Satanic MTA out to kill'. This is not a quote and never said, i.e. a false attribution to characterize plaintiff as mentally ill.

69.     "Train kook's claim" This is clearly defamatory and false.

70.     "It's the D train, as in devil." Another defamatory and false comment. The only persons named in the article[18]are Brian Burke and Reverend Sharpton, who does this apply to?

71.     The phrase "satanic terroristic criminality" was qualified in the original complaint with a footnote, this is not an accurate quote.

[18] Petitioner has never been subject of any new article or story previously and considers himself a private person and only contacted Ms. Boniello in order to assist the Post in publishing truth and not deliberate falsehood they chose.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 26

72.    "Terrorize[19]" and "assault". Not sure where
the source of these "quotes" are from, as
the Post/NYCTA, in its successful attempt to
defame and damage, parse any random
unrelated document to construct their
"kookdom".

73.    Brian Burke was not demoted in 2013 to
station-agent trainee. Brian Burke was not
demoted, other than voluntarily from Train
Dispatcher, and has a perfect disciplinary
record. There is no title of Station Agent
Trainee, you are either a Station Agent or
not. Burke accepted a contractual medical
reclassification at the same pay as Train
Operator. This took place in 2014, not 2013.

74.    As is clear from caption, Petitioner is
suing, and works for New York City Transit

[19] The New York Post, a rabid Civil Servant, blue collar and
Union hater has previously referred to all TWU Local 100 members
who went on strike in 2005, including Petitioner, as terrorists.
Peter S. Kalikow, Chairman of the MTA at the time was a previous
publisher of the NY Post and may have assisted in getting this
article written and published.

Authority, Not the MTA or the Metropolitan Transportation Authority. Two legally distinct agencies. The MTA is not and has not been a party. Burke has never worked for the MTA.

75.   The Post/NYCTA claimed "that the MTA[*sic*] intended to "endanger every soul on the train and on the track[20]" in April 2014 when its inspectors[21]entered his train[22]to see weather he was wearing corrective lenses." Clearly entering the train would and should never be a problem, there were thousands of passengers on the train and this is the

---

[20] As always throughout the hit piece no attribution for the"quotes".
    [21] Train Service Supervisors are not "Inspectors" and have received no training as "inspectors" or act as same. There is the civil service titles of Car Inspector and Road Car Inspector, which are important non-supervisory positions in a different department, Car Equipment. They are responsible for repair of trains.
    [22] Train Service Supervisors regularly ride trains and empty crew cabs, for compliance with rules purposes. This is an accepted and proper practice and does not interfere with safe train operation or constitute harassment. A TSS can judge the safe operation of a train in this manor without ever entering the operating cab, a presumed distraction at best. Mr. Akselrod and Ms. Nolan regularly terminate Civil Servants for allowing people in the cab, including friends, relatives etc. as the presumed safety violation of having another body in the small cabs is deemed intolerable and unjustifiable for any reason.

reason for the subway. Petitioner has no

idea, thought or say in how many TSSs, or

"Inspectors" for that matter, road his

trains on April 14 and 15 2015. This is

routine and appropriate. The issue was and

is the attacks, assaults and serial

harassment by 5 TSSs **IN THE OPERATING CAB**.

The Three TSSs who testified at the WCB

hearing acknowledged that the verified

correct eyewear was being worn when the

train entered in and stopped in the station

and prior to entering cab. Thus this was not

the purpose for their presence, which was to

harass to the point of a panic attack and

PTSD.[23]

---

[23] Petitioner, in discussions with Union safety personnel, discussed and inquired why the TSSs did something so unsafe and criminal, when they could simply lie and state Petitioner was using a cell phone or wearing no glasses. This is because those accusations as a first offense for a 13 year employee with a clean record would not lead to a termination. Mr. Daley, the last TSS, and to a lesser extent the other 4, maliciously body checked Petitioner three times and clearly was attempting to cause a defensive push away, which would then be characterized as an assault by Mr. Daley and immediate termination and

76.     This case[24] is primarily a retaliation case. While Mr. Odums may have been motivated by other animus, even in his case retaliation for supporting Mr. Estes was the driver. I have no evidence Ms. Nolan is inspired by hatred of Irish or Catholics or men over 40. The possibility exists but Occam's Razor would lead us to retaliation as the sole motivator for all the most recent adverse job actions and harassments and hostile workplace.

77.     Train Operators are allowed to wear "baseball caps". This is a brutal lie about PERB case # U-33283 where Complainant was barred from identifying himself in any way as a Shop Steward on NYCTA property or during lunch. Petitioner never kept "moldy

designation as a criminal. There was some testimony at the WCB hearing of an additional supervisor or manager at 205 street station, who conspired to establish and then verify this.

[24] And the United States Department of Commerce case, The Census Bureau was never sued.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 30

food" in any refrigerator, which would and
should be removed or banned, but honey,
which never spoils, and lemon juice. False,
malicious, defamatory and damaging.

78. "Transit sources", i.e. Ms. Kristen Nolan,
knows that PERB did not "rejected his claim
that he was assaulted by a boss in 2007."
Again false and defamatory. There was no
rejection full stop. There was a negotiated
stipulation that NYCTA cease and desist
prior unlawful activity and recognize
Plaintiff as a Shop Steward.

79. "Burke" was never asked to remove required
eyewear. Again false and defamatory, a false
ADA violating pretext for the unsafe and
unlawful harassment.

80. Workers Comp case #G1100520 is before the
full WCB panel due to Perjury, Subornation
and Obstruction by the NYCTA. As an example
all three testilying TSSs stated that they

were standing three feet away[25], which was impossible if they were also watching the track and signals, as they stated under oath. Admittedly, if they told the truth they would be fired.

81.  Burke would be making the same, 71K, as a Station Agent, due to the fact it was not a demotion. The NYCTA has not paid Burke for the two weeks at PS248 or 12 sick days, 3 vacation weeks or 9 hours overtime worked this year. Wage theft and additional predicate RICO acts.

82.  Burke was never "laid off" by the US. Census Bureau, the census ended. The Census Bureau was never sued. Petitioner was already engaged in NYCTA hiring process at the time and the NYCTA bans dual employment, a firing offense.

---

[25] One TSS stated the correct three inch distance until ordered by NYCTS to change to the suborned, coached perjury

AMENDED COMPLAINT AND AFFIRMATION

83.    At PERB hearing of March 27, 2014, U-32637,
Burke asked Ms. Nolan of she represented Mr.
Odums, simple question. No simple answer.
This non answer lead Petitioner to believe
the clear perjury by Mr. Odums was suborned.
It s longstanding NYCTA practice for the
Department of Law to throw the lowest
ranking person possible under the bus. In
this case it would be Mr. Odums. Clearly,
Ms. Nolan pretended to be Mr. Odums attorney
so he would sign the false affidavits and
she could win her cases. Mr. Odums has no
rational legal reason to endorse the perjury
and certainly should have been apprised of
the conflict of interest he had with Ms.
Nolan, who has always only represented the
NYCTA and the Department of Law.

84.    The same goes with the suborned WCB
testilying. The three TSSs were not
represented by their own counsel and clearly

coached and pressured into their perjury. Clearly they were told if they told the truth they would be fired, which is true as any harassment is a termination violation. But since no witnesses or recording is allowed in operating cab we have the perfect, albeit wildly unsafe, location to terrorize at the orders of Ms. Nolan and Mr. Akselrod.

85.  Mr. Delize was the Line Superintendent who allegedly ordered the 5 TSSs to harass Burke. He has been forced to retire. There is no evidence that he could grab so many supervisors off of other lines for this campaign of terror. General Superintendent Roderick O'Toole and Director Akselrod could and did. Mr. Delize and even the 5 TSSs are the fall guys and patsies for their superiors.

On April 14 and 15, 2014 Ms. Kristen Nolan,
esq., an attorney for NYCTA Department of Law, in
concert with Mr. Leonard Akselrod, Director of
Labor Relations for NYCTA over Department of
Subways Rapid Transit Operations (RTO), and others,
conspired to violate Petitioner's civil rights in
an organized campaign to terrorize and
constructively terminate primarily for reasons of
retaliation. Complainant is a Whistleblower; in
fact the top, if not only, at the Authority. Ms.
Nolan works in the NYCTA Department of Law section
dealing primarily with, as they see it,
'recalcitrant' civil (or indentured) servants. The
goal of that department is to win at any cost, i.e.
"by any means necessary"[26]. Ms. Nolan dealt with
this plaintiff over the years on numerous occasions
at length and in person. These activities included,
but were not limited to, several hours at a

[26] **Malcolm Little** and also known as **El-Hajj Malik El-Shabazz**

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 35

'50h'[27]hearing and one or more Public Employment

Relations Board (PERB) hearings or settlement

conferences. Complainant is required to wear

'corrective lenses' when operating a train, or in

fact any vehicle. Please see attached 'IG Letter'

which was served on the Authority as a signed

Affidavit with attached and timely served Notice of

Claim, exhibit 2. Ms. Nolan, after several years

and numerous in person contacts, appeared to

'discover'(based on testimony at 2014 NYS

Department of Labor hearings)one or more

'disabilities'[28]. Incredibly, Ms. Nolan, and her co-

conspirator Mr. Akselrod, used their own definition

of disability under ADA, (see c, being regarded as

having such an impairment) as their unlawful

---

[27] N.Y. GMU. LAW § 50-h : NY Code - Section 50-H:
Examination of claims. Petitioner was not given requested
required transcript of that hearing and request said transcript
be included as evidence by reference in this complaint.
[28] Sec. 12102(ADA). Definitions (2) Disability: The term
"disability" means, with respect to an individual –(A) a
physical or mental impairment that substantially limits one or
more of the major life activities of such individual;(B) a
record of such an impairment; or(C) being regarded as having
such an impairment.

'pretext' (again WCB hearings 2014[29]) to terrorize a whistleblowing enemy while performing his safety sensitive train operation. To repeat, after 13+ years of safe train operation (perfect disciplinary record[30]) these two individuals, acting for the Authority decided to unilaterally, dangerously and secretly withdraw what they saw as a 'reasonable accommodation' under ADA. To accomplish this they ordered at least 5 Train Service Supervisors (TSS) to terrorize, harass, 'interfere with safe train operation', assault and create the penultimate 'hostile workplace environment' within the small confines of an operating cab while train was in

---

[29] The Authority, as is their practice, on the record stated they would purchase the WCB hearing transcript and supply same to Petitioner's Counsel for approval. This was not done and Complainant wishes to include said transcripts by reference and will require same for any 12(b)6 motion.
[30] Plaintiff not only has a perfect disciplinary file, but was accepted by the Authority as a Trainer, worked 4 years as a contractual Safety Representative and was a supervisory Train Dispatcher who opted for voluntary demotion for reasons of pay, seniority, 2 year probation, *etc.*.

motion with up to 2,000 passengers. This satanic[31]

terroristic criminality was intended to, and did in

fact, endanger every soul on the train and on the

track. Please see attached (exhibit 3) document

from the federal Department of Labor (Occupational

Health and Safety Administration (OSHA)) accepting

this petitioners *prima facia* case for retaliation

by not paying owed 60% sick pay. The OSHA case has

been withdrawn as the 60% from 2014 has been paid.

Petitioners Union (Transport Workers Union,

Local 100) has been fully apprised of this unlawful

conduct and is fully supportive of their member.

They are especially concerned as this new unwritten

policy by the Department of Law and Labor Relations

instructing supervisors that they have a free hand

to attack and harass whistleblowing, or in fact any

unpopular Train Operator, Conductor or Bus

Operator. This is an extreme danger to the lives

---

[31] The NYCTA Department of Law's motto,"Do what thou wilt
shall be the whole of the Law….." developed in the early 1900s
by Aleister Crowley.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 38

and careers of operating Civil Servants, not to mention the public. We know why the Authority retaliated against this whistleblower but why endanger the public? Primarily two reasons (1) There can be no witnesses. Conductors and Train Operators can, and have been terminated for allowing unauthorized personnel in the cab, as anyone in the cab is a potential distraction and presumptively unsafe. (2) No recordings. Operating personnel are affirmatively barred from using any "electronic device" while operating. Thus to record any attack while operating would itself be a termination offense. So we now have the infamous he said/she said dissonance. If the harassing supervisors, acting on management direction/protection, told the truth they would be fired on the spot. So they 'testily'. Let us go to management's version of what happened (see again, by reference, WCB transcripts possessed by defendant). Ms. Nolan on Friday April 11, 2014 at a

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 39

PERB settlement conference was told that 3
Affidavits she submitted may have been suborned.
Apparently she agreed as on the following workday
she called in her favors with management and set
about successfully separating Complainant from his
livelihood and into treatment for medical maladies
caused by said campaign of terror. Please see again
'IG Letter'. The Subornation of the 3 Affidavits is
being investigated by the Kings County DA, in
cooperation with TWU Local 100. The 3 TSS's that
terrorized the Plaintiff on Tuesday, April, 15,
2014 testilied at several WBC hearings in 2014.
They lied not only about not harassing or
assaulting the injured party but on provable
deliberate misstatements. For example, all three
stated that they were standing 3 feet away while
contradictorily stating they were viewing the track
and approaching signals. At 3 feet away the view is
blocked by the bulkhead, as the suborning attorney
did not know. One TSS stated he was 3 inches away

(correct) and then cued by NYCTA counsel changed that to the "3 feet" perjury. In an attempt to mitigate the crime, one TSS stated, under oath, that Petitioner, or in fact any Train Operator, was allowed to expel or bar them from the operating cab. This was brutally contradicted by the TSS that endangered the complainant (and the public) the most by the ferocity of his attack, TSS Daley. So why would the 5 TSS's perform management's bidding and instruction to harass and terrorize a Motorman while he is operating a train? Consideration. The next promotion from TSS is Deputy Superintendent, a managing title not subject to Civil Service law or procedure. No team player, no promotion. Of course, TSS's can themselves be harassed by management, even if they do not seek promotion, via job assignments etc., or even be demoted if still on their unlawful 2 year promotion (see IG Letter).

**NORMAL PROCEDURE**

A neutral fact finding body may ask, "What is the procedure if a complaint, deliberately incorrect or not, is received by management?" Occasionally, safety complaints are made by passengers or employees. Depending on the nature of the complaint, it is either ignored or investigated by one's assigned TSS. Every TSS has aprox 30 hourlies assigned to them and any investigation regarding those thirty is put to them. But not in this case. Why? Because Mr. Greaves, Petitioner's assigned TSS, would not perform the necessary terroristic hostile acts. Simple. TSS Greaves was available and on the clock on both April 14 and 15th 2014, the dates of the concerted adverse job actions, and was not contacted by management to investigate. TSS Greaves was called by the Department of Law to testify at a WCB hearing and when the Authority Counsel saw his testimony would be inculpatory to their case he was sent home and an adjournment was requested. When are complaints not even investigated? When they involve allegations of unsafe train operation by someone who

never saw the person operate, such as the malicious
complaint by Ms. Nolan. There is a procedure to catch
safety violations by operating personnel, complaint or
no complaint, malicious or not. They are called
"Efficiency Tests" and are regularly performed to catch
unsafe operation. Petitioner has a 24 page directive
which will be entered as an exhibit if Defendant does
not acknowledge their violation of this procedure.
Initially, all 5 TSSs comported with the standard
operating procedure (SOP) in observing Petitioner in
entering and stopping at boarding stations. They
acknowledged observing Complainant, as always, in
compliance with all safety bulletins and rules. The SOP
is to then wait for the next train and do an identical
observation. Instead, in violation of over a 100 years
of precedent regarding safe train operation, all five,
over the course of two days, in an escalating manor,
instituted their 'hostile workplace' on this bizarre
flimsy 'pretext' immediately after it was proven false.
There was no legitimate reason for any of the 5 to

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 43

enter the operating cab and interfere with safe train operation, endangering the Public, contractors and employees. Mr. Akselrod was asked, under oath, if he ever ordered similar treatment on another employee. He answered in the negative. Management would love to expand on this newfound 'management prerogative' to rid themselves of all actual, or potential, whistleblowers and if it endangers millions of passengers and tens of thousands of employees, so what? "By any means necessary", "Do as thou wilt" and finally, "Power corrupts….[32]". Petitioner pleads to this neutral fact finding body to end this criminality.

## PREDICATE ACTS

As to the predicate acts for federal and state RICO, please review attached exhibit 3 "MTAMONEYTHROWNAWAY". This information was disclosed to the Authority at previous 50-h hearing. Also see allegations of Obstruction of Justice regarding the river of Subornation. "MTAMONEYTHROWNAWAY" involves

---

[32] "Power tends to corrupt and absolute power corrupts absolutely." John Dalberg-Acton, 1st Baron Acton

primarily Fraud. As to *Mens Rea*, see the federal RICO case United States vs. Key West Police Department 837 F.2d 1509.

## EEOC "RIGHT TO SUE" LETTER

Please see attached exhibit 1. This case was filed within 90 days of receipt of letter, received on 12/26/14. Also attached is the 'Intake Questionnaire' for EEOC case # 520-2015-00756, with Petitioner claiming discrimination as a protected class under race, sex, age, disability, national origin, religion, and retaliation. Complainant has filed previous EEOC action and assisted TO Estes in his Transit EEO case.

## NOTICE OF CLAIM

A timely Notice of Claim was served on the NYCTA on July 11, 2014, attached as exhibit 2. No 50-H (**N.Y. GMU. LAW § 50-h**)[33] Demand was served personally or by

---

[33] The demand shall be in writing and shall be served personally or by registered or certified mail upon the claimant unless the claimant is represented by an attorney, when it shall be served personally or by mail upon his attorney. The demand shall give reasonable notice of the examination. It shall state the person before whom the examination is to be held, the time, place and subject matter thereof and, if a physical examination is to be required, it shall so state. If the place of

registered or certified mail within 90 days, or at all.
An email, attached, was sent the workday prior last
December to a demand for a 'Statutory Hearing', but was
not considered reasonable notice, timely, proper format
or properly served. Nevertheless, Discovery Deposition
and Interrogatory remain available.

### CONCLUSION

WHEREFORE, plaintiff prays that the Court grant
such relief as may be appropriate, *including* injunctive
orders, punitive damages, pre-judgment interest,
medical costs, other costs, back wages, pain and
suffering, and attorney's fees.

Dated this 26TH day of JUNE, 2015

Brian Burke, *pro per*

examination is located outside the municipality against which
the claim is made, the claimant may demand, within ten days of
such service, that the examination be held at a location within
such municipality. Such location shall be determined by the
municipality. If a physical examination is to be required and
there is no appropriate place for such an examination within the
municipality, such examination shall be given at a location as
close to such municipality as practicable. No demand for
examination shall be effective against the claimant for any
purpose unless it shall be served as provided in this
subdivision within ninety days from the date of filing of the
notice of claim.

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 46

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Brian Burke
145 East 23rd Street
Apt. 4r
New York, NY 10010

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-00756 | Austin F. Turner, Investigator | (212) 336-3750 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin J. Berry* (signature)

**Kevin J. Berry,
District Director**

DEC 19 2014

(Date Mailed)

Enclosures(s)

cc: Attn: Eamonn Foley, Exec. General Counsel
**NEW YORK CITY TRANSIT AUTHORITY**
130 Livingston Street, 12th Floor
Brooklyn, NY 11201

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Austin F. Turner
Investigator
Phone (212) 336-3750
Fax (212) 336-3624

VIA U.S. MAIL
Brian Burke
145 East 23rd Street
Apt. 4R
New York, NY 10010

Re:     Burke v. New York City Transit Authority
        EEOC No.: 520-2015-00756

Dear Mr. Burke:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence you submitted.  You allege you were discriminated against because of your race, sex, national origin, age, disability, religion and participation in a protected activity.

Per our conversation of December 10, 2014, the Commission has reviewed the information you submitted and has determined that there is not enough information to conclude that further investigation would likely result in finding a violation of federal law.

This does not certify that Respondent is in compliance with the statutes.  No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue.  Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice.  Otherwise, your right to sue will be lost.

Please contact Austin Turner at (212) 336-3750 if you have any questions.

Sincerely,

_____ for            DEC 1 9 2014

Kevin Berry                     Date
District Director

RECEIVED
DEC 10 2014
EEOC N...



## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination.** Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.**

**1.   Personal Information**

Last Name: Burke     First Name: Brian     MI: T

Street or Mailing Address: 145 East 23rd Street     Apt Or Unit #: 4R

City: New York     County: New York     State: NY     ZIP: 10010

Phone Numbers: Home: ( 646 ) 434-8513     Work: ( 347 ) 643-7700

Cell: ( 212 ) 614-8515     Email Address: briantburke@gmail.com

Date of Birth: 09/13/1961     Sex: Male ☒    Female ☐    Do You Have a Disability?   ☒ Yes   ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino?   ☐ Yes   ☒ No

ii.  What is your Race? Please choose all that apply.   ☐ American Indian or Alaska Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?  Irish

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Thomas Burke     Relationship: Father

Address: 850 Broderick Street, apt 317     City: San Fransisco     State: CA   Zip Code: 94115

Home Phone: ( 510 ) 258-4627     Other Phone: ( )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: New York City Transit Authority

Address: Stillwell Avenue Terminal     County: Kings

City: New York     State: NY  Zip: 11224     Phone: ( 347 ) 643-7700

Type of Business: Subway     Job Location if different from Org. Address:

Human Resources Director or Owner Name: Thomas F. Prendergast     Phone: 212-878-7000

**Number of Employees in the Organization at All Locations:** Please Check (√) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you can)   **Are you a Federal Employee?**  ☐ Yes  ☒ No

Date Hired: 02/26/2001     Job Title At Hire: Train Operator

Pay Rate When Hired: Minimum wage     Last or Current Pay Rate: $33

Job Title at Time of Alleged Discrimination: Train Operator     Date Quit/Discharged: n/a

Name and Title of Immediate Supervisor: Train Service Supervisor Greaves

If **Job Applicant**, Date You Applied for Job _____   Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race   ☒ Sex   ☒ Age   ☒ Disability   ☒ National Origin   ☒ Religion   ☒ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: Roman Catholic, Irish _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). Retaliation for protected activity, including assisting former TO Estes in EEO com.

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 12/01/2014         Action: Refusal to pay 60% sick, as per contract, as retaliation for filing grievances, safety reports, as a Safety Rep, assisting members as a Shop Steward, filing PERB cases, etc.

Name and Title of Person(s) Responsible: Leonard Akselrod, Director of Labor Relations, Kristen Nolan, esq. Attorney NYCTA DOL

B) Date: 04/14/2014, 04/15/2014   Action: Brutally and criminally harassed while operating train by half a dozen supervisors in an escalating manor. This resulted in a PTSD diagnosis, which is being treated

Name and Title of Person(s) Responsible: Leonard Akselrod, Director of Labor Relations, Kristen Nolan, esq. Attorney NYCTA DOL

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
I reported Subornation of Perjury by the NYCTA Department of Law, please see attached 'IG Letter'. This is being investigated by Kings County District Attorney's Office

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**
The alleged 'discovery' of what the NYCTA claims, after 13 years of reasonable accommodation, to perceive as a disability, see 'IG Letter'. By Kristen Nolan, esq., the Suborner, Leonard Akselrod and the Train Service Supervisors who brutally harassed this Civil Servant out of his job. They have stated that they will continue this conduct, where I to return to train operation, endangering the public, myself and fellow employees, as precedent against whisleblowers.

**8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| All other Train Operators | All | Train Operator |

Description of Treatment Unprecedented interference (within the last 100 years) of safety sensitive Civil Servant, creating danger. No legitimate cause was found for this harassment pretext.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Evan Miller | Black Female rest unknown | Conductor |

Description of Treatment Paid 60% sick while out on controverted workers comp claim

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| None | | |
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| Description of Treatment | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Roger  Toussant | Black Male Trinidad, unknown | Track Worker |
| Description of Treatment Terminated without legitimate cause, investigated by PI's paid out of public funds, etc. | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |
| Description of Treatment | | |

**Answer questions 9-12 only if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.**

**9.   Please check all that apply:**

- ☐  Yes, *I have a disability*
- ☐  I do not have a disability now but I did have one
- ☒  No disability but the organization treats me as if I am disabled

**10.  What is the disability that you believe is the reason for the adverse action taken against you?   Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).**
See attached 'IG Letter'. The perceived "disability" or "disabilities" does not and has not limited anything. I have been required to wear corrective lenses for 13+ years, as I have done.

**11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**

Yes ☒   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?
Prescription glasses.

**12.  Did you ask your employer for any changes or assistance to do your job because of your disability?**

Yes ☐   No ☒

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

I have been required by the NYCTA to wear corrective lenses for 13+ years

Describe the changes or assistance that you asked for:
To be allowed to do my job without public endangering harassment, see 'IG Letter'

How did your employer respond to your request?
By brutal unsafe harassment, constructive termination, denial of 60% sick pay, etc..

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| TSS Daley | Train Service Supervisor | Bedford Park Station, Bronx New York 347-643-7700 |

**What do you believe this person will tell us?**
That he did not harass me or interfere with my train operation.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Leonard Akselrod | Director of Labor Relations | 2 Broadway, New York, NY 511 |

**What do you believe this person will tell us?**
That he did not retaliate or discriminate against me. He will have to acknowledge the conspiracy, but will claim attorney client privilege, despite the fact Ms. Nolan is not his attorney.

**14. Have you filed a charge previously in this matter with EEOC or another agency?     Yes ☐    No ☒**

**15. If you have filed a complaint with another agency, provide name of agency and date of filing:**

**16. Have you sought help about this situation from a union, an attorney, or any other source?    Yes ☒    No ☐**
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Levine & Blit, PLLC, Linsey Blackwell, esq. November 21, 2014. Considering representation. IG Letter sent to MTA Inspector General and others by email on April 16, 2014 and later by certification. Contacted by Kings County DA.

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.** If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box **1. If you want to file a charge, you should check Box 2.**

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

| _Signature_ | 12/01/2014 |
|---|---|
| **Signature** | **Today's Date** |

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (9/20/08).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. **ROUTINE USES.** EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

T 29—Notice of Claim against blank Transit Authority: 6-83

JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

In the Matter of the Claim of

# BRIAN BURKE

against

# NEW YORK CITY TRANSIT AUTHORITY

TO:

*TRANSIT AUTHORITY*

*PLEASE TAKE NOTICE that the undersigned claimant(s) hereby make(s) claim and demand against you as follows:*

1. *The name and post-office address of each claimant and claimant's attorney is:*

BRIAN BURKE pro se
145 EAST 23RD ST APT 4R
NEW YORK, NY 10010

2. *The nature of the claim:* CIVIL & CRIMINAL HARASSMENT N.Y. fin. Law §§ 182,194 ESCALATING FRAUD 18 U.S.C. 1964 UNLAWFUL & CONSTRUCTIVE TERMINATION VIOLATIONS OF 115 STAT 272, PCA 460 SEC 460.20, 84 STAT 922,3 42 U.S.C. 1983, AND ALL OTHER FEDERAL, NYS AND NYC LAWS THAT APPLY. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

3. *The time when, the place where and the manner in which the claim arose:* FROM THE TIME OF, APPROXIMATELY, 14:47 (2:47 PM EST) STILLWELL TERMINAL, CONEY ISLAND, BRKN, NY TO 21:40 (9:40 PM EST) BEDFORD PARK TERMINAL, TIME AND LOCATIONS IN BETWEEN INCLUSIVE, ON MONDAY APRIL 14, 2014 ALSO, APPROXIMATELY, 14:47 (2:47 PM EST) STILLWELL TERMINAL, CONEY ISLAND, BKLI NEW YORK TO, APPROXIMATELY, 21:40 (9:40 PM EST) BEDFORD PARK TERMINAL, BRONX, NY INCLUSIVE OF TIMES AND LOCATIONS IN BETWEEN, APRIL 15, 2014

4. *The items of damage or injuries claimed are:* TERRORISTIC, CONSPIRATORIAL ACTS COMMITTED UPON A WHISTLEBLOWING CIVIL SERVANT. $10,000,000. PUNITIVE DAMAGES $100,000,00 BRIAN BURKE WAS DIAGNOSED WITH POSTTRAUMATIC STRESS DISORDER BY DR. JGN XIAO, MD ON APRIL 21, 2014 DUE TO CONCERTED ACTUAL ACTIVITY BY R.I.C.O. ACTORS WORKING FOR DEPARTMENT OF LAW, NYCTA (GENERAL COUNSEL'S OFFICE) AND SUBORDINATES, PLEASE SEE ATTACHED "IG LETTER".

*TOTAL AMOUNT CLAIMED*     ($110,000,000.00

* Do not use dollar amounts outside of New York City.



fin macumhail <briantburke@gmail.com>

## 50h Hearing Monday

2 messages

**Nolan, Kristen** <Kristen.Nolan@nyct.com>                    Fri, Dec 19, 2014 at 10:51 AM
To: B <briantburke@gmail.com>

Mr. Burke:

Please let me know by today at 4 pm whether you plan to attend the 50h hearing on Monday with respect to the Notice of Claim you filed. I need to know whether I should order a court reporter and reserve a conference room. I will try to contact you by phone as well.

Thank you,

Kristen Nolan

Kristen M. Nolan
Attorney
New York City Transit Authority
130 Livingston St - 12th Fl
Brooklyn, NY 11201
(718) 694-5720
(718) 694-5727 **(fax)**

**Nolan, Kristen** <Kristen.Nolan@nyct.com>                    Fri, Dec 19, 2014 at 10:55 AM
To: B <briantburke@gmail.com>

Mr. Burke:

I just tried reaching you at the number you listed (212) 614-8515. It appears to be disconnected. If I do not hear from you by the end of the day today, I will assume you are not appearing on Monday.

Thank you,

Kristen Nolan

**From:** Nolan, Kristen
**Sent:** Friday, December 19, 2014 10:51 AM
**To:** 'B'
**Subject:** 50h Hearing Monday

[Quoted text hidden]

Brian Burke

[unclear faded text]
[unclear faded text]

Date: Wed. Apr. 16, 2014

Barry L. Kruger
Inspector General
Metropolitan transportation Authority
2 Penn Plaza
5th Floor
New York, NY 10121

Dear Inspector General Kruger:

I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct. Executed on 04/16/2014. Brian Burke /S/. I am not a lawyer. I am a Train Operator and Shop Steward. I have been compelled to write you for my safety and others. I became acquainted with your good offices many years ago when I reported to you ongoing violations of NYS Education Law Title VIII Article 130 Subarticle 4 **§6512 Unauthorized practice a crime.** I called the (s)crew office to report I had "gastrointestinal distress". The NYCTA employee stated "you said stress", which by syllable was correct. He then proceeded to diagnose me, refer me to a physician and commit the adverse job action of taking me out of service. I reported this felony to your office and this activity ceased.

The problems occurring now are much more egregious. Timeline: hired as a Train Operator Feb. 26, 2001. On 9/11, my RDO, I called the (s)crew office and requested if they needed additional TO's. They did not. Extra/extra, on 9/13-forward I was assigned to Chambers E, directly under the pile. I have applied to the Zadroga Fund. When I was put back on the road, a TSS Petrie boarded my southbound W train at 36th Street. He was immediately hostile and I operated accordingly, i.e. slow. He took me out of service for "creeping", which I acknowledged doing. He wanted to take my conductor out for allegedly closing both zones simultaneously. There was no conductor on board but there was a TO at Stillwell. He informed RCC, Stillwell Administration, W line management and the (s)crew office that he was taking me, a rookie, out of service for creeping. I appeared at 370 Jay 8am next day. At Noon, I was approached by my friend Eddie Dos Santos. Apparently in TSS Petrie's written report (G2) he wrote that I was taken out of service for "almost going out of a station" and demanded my termination. This caused a big laugh because the 10car marker at those stations is at the end of the station. Either you are in, or you are out. No "almost". This was a deliberate lie and would count as Perjury and/or Subornation, except that these 'G2's' are not sworn. Nevertheless, dozens of employees have been terminated over the years for 'lying' on G2's or in oral reports to Management. TSS Petrie would take a greater amount of Civil Servants out of service than all the hundreds of others combined and always lied, perhaps pathologically, on all his G2's. Years later, he attempted to strong arm rob a work-train motorman /Marine. Caught unaware, the Marine regressed to his training and defended himself. TSS's then did not have uniforms. TSS Petrie was hospitalized and incident tested. Oxycodone in his system. A TSS is the highest paid annual title. It is the most 'safety sensitive'. A TSS is effectively a 'super-motorman' and operates all subway equipment in all conditions including after 12/9's, derailments, collisions, pull-a-parts, other-than –head-end, etc.. I realized he has been on that for over a decade. This was covered up. He still works as a TSS.

Four years ago I picked X/S and became acquainted with 205th street. There was no drinking water available for the Members. As a Shop Steward, I approached the Line Superintendent R. O'Toole, at the next opportunity. At Bedford Park Crew Reporting Center, I informed him there was no Potable Water at 205th St.. He informed me that he, and by extension the Authority was not required to provide "potable water" but instead "running water". The only difference between "running water" and "potable water" is that you can drink one and not the other. He claimed the "bulletins" said so. I pointed out that twice a year the NYCTA President distributes a signed letter ordering us to be hydrated at all times. He told me to tell the President to "read the bulletins". In order not to be grossly insubordinate, I am doing so now. Present were TSS Daley(sp?) and others. I immediately informed my good friend and International Delegate roomie, Kevin Harrington, V.P. RTO TWU Local 100 in person. I ranted for hours about this and said, and still believe, that this opinion/action is incompatible with being management or management by designation. The "bulletins" do not require the TA to have oxygen in the air on the premises, according to the same logic. This is "waste fraud and abuse" of the highest order. Brother Kevin reached out to Supt. Batalado, who had water bottle and water filter dispenser delivered to 205th st.. The bottle dispenser disappeared to O'Toole's office. When Supt. O'Toole was, of course, promoted, despite payroll padding and gambling charges, Supt. Capone took his office. Supt. Capone approached me and requested was there anything the TA could provide in the way of crew room amenities etc.. He explained that there is an ongoing maintenance budget line to maintain and/or upgrade/replace old or broken appliances *etc.*. On information and belief, these monies were and are stolen by other managers, including O'Toole, and converted to 'bonuses'. Supt. Capone, with 20+ years as a manager told me he was being forced out for assisting the Civil Servant employees under his care. He was/is diabetic and O'Toole removed his water as retaliation. The reign of harassment began for me.

I accepted a promotion to Train Dispatcher August 31, 2012, due to ongoing harassment/Adverse Job Assignments by the (s)crew office. I believe this was orchestrated out of O'Toole's office. My promotion letter stated "one year probation". So does Civil Service Law. Ms. Pinkney, of Labor Relations told me at the Step II, regarding the Education Act violations I brought to your attention, that the TA "does not have to follow law". I.E. "Do what thou wilt shall be the whole of the law" Aleister Crawley. I got various 'legal opinions' from management and the SSSA. I resumed my current title and returned Dec. 17, 2012. A Supervisor, I defer naming him, his 'nom du club', 'Rue Paul', thus, RP, harassed me from the moment I signed in until I picked off the line. I filed a PERB and NYS Human Rights case against the TA for allowing RP to do so. I believe this is an element of the ongoing retaliation for attempting to get water for the members and assisting a Member on an EEO case. To list all the harassment would appear *ad nauseum*. I had a settlement conference Friday regarding another PERB case regarding my right to wear union gear and identify myself as a Shop Steward. This was a FAIL and I told opposing counsel (TA) that the provable Perjury Mr. RP committed in three sworn affidavits was, on information and belief, Suborned by one or more employees of NYCTA Law Department. The Harassment accelerated Monday and quadruped Tuesday. I believe I may be in mortal danger. Rev Sharpton was accused of 'ratting out the mob' and I maybe justly accused of 'ratting out the MTA'. I believe the MTA may be more dangerous. There is 600 volts, high structure, 600 ton trains and an infinite way to be murdered or 'suicided'. www.urbandictionary.com/define.php?term=suicided . I was informed years ago that when a motorman inspecting his train in the yard stepped in an electrified puddle and was electrocuted, the TA contended he "committed suicide" in order to deny his family the 50k death benefit. As a Catholic I would not be allowed in a consecrated grave. Various supervisors this week attacked me for having one or more alleged 'disabilities' that they would terminate me for. As a young man applying to be a Navy Pilot I discovered I was mildly astigmatic (myopia) and I am also mildly photophobic. I am left handed and potentially fatally allergic to penicillin. I have severe Allergic Rhinitis, but do not take anti-histamines

as that would endanger the Public. I do not carry an EpiPen but a homemade Medical Alert Band. I have a below average BMI. I have pre-mature grey hair. I am left-handed. On Information and Belief, none of these alleged disabilities put the Public at danger. Admittedly my Allergic Rhinitis sometimes causes involuntary eye watering, sneezing etc. and can be very distracting. If the TA plans to fire me for possessing this inherited condition I will immediately file an ADA and RICO case against the Authority and suits against the malefactors individually. Their next act will, I believe, be an attempt to derail my train packed with thousands of passengers. I was brutally harassed yesterday 5 minutes before I cleared by TSS Daley, for the first time.

I consider these actions to be a form of Constructive Termination and a Cause of Action. I will be requesting the immediate Termination, Fine, Arrest, Indictment, Trial and Incarceration of any Racketeer Influenced Corrupt Individuals acting in concert. I will be, in addition, informing outside law enforcement. I will be filling another Notice Of Claim, a Safety Dispute Resolution Form and an IOD form for the deliberate stress/harassment/Retaliation caused/committed against this admitted whistleblower.. I will be filling another PERB case. I will be filing a NYC Human Rights Case. Then there is Federal and State Court and Injunctive Relief. While I prefer *pro se*, I will be obtaining contingency Counsel. I will request my good friend, John Samuelsen, or my other good friend, Curtis Tate, to be present when I sign in tomorrow. If they are unavailable I will request Local 100's General Counsel. I will video and request the SDRF be signed by a friend I only met once, CTO Herbert E. Lambert. When I was a "TD-in-training" at RCC, CTO Lambert appeared genuinely concerned about his subordinates, our training and even the lack of drinking water at 180 street facility. I have no reason to believe he, CEO T. Prendergast, President C. Bianco. ACTO Greenblatt, former General Counsel Martin Schnabel, current GC Lewis S. Finkelman are aware of these ongoing felonies or frauds/harassments/Retaliation.

Sincerely,

[Brian Burke /S/]
[Train Operator, Shop Steward, Safety Rep. TWU Local 100]

**U.S. Department of Labor**          Occupational Safety and Health Administration
                                      201 Varick Street, Room 670
                                      New York, New York 10014
                                      (212) 337-2378
                                      (212) 337-2371 - fax



February 5, 2015

Brian Burke
145 East 23rd Street Apt. 4r
New York, NY 10010

**_Certified Mail #7014 0150 0001 1026 0697_**

Re: NYCTA/Bruke/2-4173-15-095

Dear Mr. Bruke:

This letter acknowledges receipt of your whistleblower complaint filed under National Transit
Systems Security Act (NTSSA), 6 U.S.C. §1142, on **January 15, 2015** against **NYCTA**
(Respondent).

The Occupational Safety and Health Administration (OSHA) is responsible for enforcing the
whistleblower provisions of NTSSA, and will conduct its investigation following the procedures
outlined in 29 CFR Part 1982. You may obtain a copy of the pertinent statute and regulations at
http://www.whistleblowers.gov. Upon request, a printed copy of these materials will be mailed to
you.

Under these procedures, OSHA will disclose to the parties information relevant to the resolution of
the case as well as provide all parties an opportunity to fully respond. As such, both you and
**NYCTA** will receive a copy of each other's submissions to OSHA that are responsive to the above
referenced whistleblower complaint. We have notified Respondent of the filing of this complaint
and provided Respondent with a copy. **We request that any future documents that you submit
to OSHA, you also send a copy to the Respondent at the address below:**

**NYCTA**
**130 Livingston Street, 6th Floor**
**Brooklyn, NY, 11201**

If the information provided contains private, personally identifiable information about individuals
other than you, such information, where appropriate, should be redacted before disclosure. OSHA
may contact the party directly for the unredacted copy, if necessary.

Attention is called to your right and the right of any party to be represented by counsel or other representative in this matter. In the event you choose to have a representative appear on your behalf, please have your representative complete the Designation of Representative form enclosed and forward it promptly.

At this time, an investigator has been assigned to your case and will be contacting you in the near future. In the interim, please save any evidence bearing on your complaint, such as notes, minutes, letters, or check stubs, etc., and have them ready when the investigator named below meets with you. It will be helpful for you to write down a brief factual account of what happened and to prepare a list of the names, addresses, and telephone numbers of the potential witnesses, together with a brief summary of what each witness should know.

You are expected to cooperate in the investigation of your complaint and failure to do so may cause your complaint to be dismissed.

Sincerely,

*Teri M. Wigger*

Teri M. Wigger
Assistant Regional Administrator

Dennis Vamvakas
U.S. Department of Labor-OSHA
201 Varick Street-Room 670
New York, NY 10014
Telephone: 212-337-2332
Fax: 212-337-2332
Vamvakas.Dennis@dol.gov

Enclosure: Designation of Representative

 

# News

## More about Underground spaces

Fri, 12/09/2011 - 4:11pm

**A HUGE, UN-TAPPED, ALMOST COST- FREE ALTERNATIVE THAT IS BEING SQUANDERED!**



As we stated in the Real Estate Craziness article, one of the victims of the "mad dash to 2 Broadway" were the many underground offices and crew quarters that have been built over the years, only to be abandoned during the big move to 2 Broadway.



There's still time to block the 370 Jay give-away! Call City Comptroller John Liu at 212-669-3916.



Call State Comptroller Tom DiNapoli at 518-474-4044 and tell him: Stop the give-away of the MTA's 370 Jay Street asset.





**WORKING FAMILIES**

SUPPORTS OUR FIGHT!
CLICK HERE AND SIGN THE
PETITION TODAY!

**Money Thrown Away**



READ MORE →

## Exposed: The MTA's Untapped Real Estate Resource

MTA: Money Thrown Away                                                    3/20/15 10.07 AM

Mon, 06/18/2012 - 1:07pm
When the MTA headquarters building at 370 Jay Street was 95% emptied in 2005 (during the mad dash to occupy and justify 2 Broadway), let's not forget that the 130 Livingston building – just a few blocks away in downtown Brooklyn – was also emptied of at least 60-70% of its personnel. This 60-70% represents 275-320,000 sq ft. of prime office space that is not being utilized.

In the rush to occupy 2 Broadway and justify its titanic lease payments, hundreds of thousands of square feet of real estate the MTA owned was abandoned. Our original argument was that the MTA could save the $2.3 billion that remained on the lease of 2 Broadway by moving out and subleasing the space. The way we originally proposed to do this was to restore 370 Jay Street and utilize that space, and move back into the 130 Livingston Plaza space that had been abandoned.

Now that it appears we are losing 370 Jay Street, has our argument changed? No, it has not! Our original concept remains the same. There are other places to go for the MTA. Even if Jay Street is no longer on the table with its 540,000 sq. ft., we have found that much space and more! Time to revisit our underground spaces story!




READ MORE »

Add new comment

## MTA -- Not So Fast!
Wed, 05/02/2012 - 1:15pm
TWU Local 100 President John Samuelsen tells the MTA Board what's wrong with the giveaway of 370 Jay:



Add new comment

## After the NYU-Bloomberg-MTA Love Fest
Fri, 05/18/2012 - 2:34pm
By now everyone has read of the Mayors quickie press conference to give away the 370 Jay street Building to NYU. On April 23, the mayor had a rushed press conference that all of the local media were somehow invited to. He rolled out all the stops and had quite a cast in his little show. He had Brooklyn Borough President Marty Markowitz; City Council speaker Christine Quinn; NYC Transit President Prendergast; State Senator Dan Squadron; NYU President John Sexton; Senator Charles Schumer, etc., all patting themselves on the back, congratulating each other and talking about what a great


NYU President John Sexton high fiving after the deal went through

Upload your documents anonymously*

Choose File   no file selected
Maximum Filesize: 5 MB                                    0  :

Optional Info

Name:

Email:

Address

Street:

Additional:

City:

State/Province:

Postal code:

CAPTCHA

Please type the letters and numbers you see below. It is not case sensitive.
**What is the first letter in the word "leak.":** *

Fill in the blank

*To help protect your anonymity, we will erase any record of your IP address from our servers. To prevent your own Internet Service Provider from tracking your IP address, you may be interested in Tor anonymizing software. Any document that contains information that could be used to trace the source of the document will not be revealed by

deal this is for the people of the city of New York.



But let's take a look at what really happened here...

READ MORE →

Add new comment

The MTA Real Estate Departments whimsical and clueless ideas about underground spaces

This is a nice idea but... not very practical underground

This would make a great place for a maintainer's reporting quarters but...A Disco? ...Really?

More stories about corruption during the renovation of the 2 Broadway building debacle:

**MTA Infiltrated by the Mob**

**Settle Two Suits in MTA Cost Overruns**

**Top five botched real estate deals**

**State Comptrollers Report 2004**

**Transportation Security**

**Wiseguy admits fleecing the MTA**

**MTA Officials Fired In Bribery Inquiry**

**MTA 10M Con**

**MTA Chairman Blocked Inquiries**

**Law Firm Got Big Fees**

**MTA and Landlord Fighting over 2 Broadway**

**MTA - $1 billion real estate assets?**

NY1:
**MTA not maximizing real estate potential**

**State Comptrollers report**

### Real Estate Craziness: The 2 Broadway story
Wed, 12/14/2011 - 1:15pm

Video   Image



Recently, the MTA lost out on an opportunity to SAVE almost 2.3 billion dollars, thus avoiding MTA service cuts and preserving the fare. Why would the MTA do this? To understand this topic, we must delve into the the 2 Broadway story and the VERY strange and slimy world of MTA real estate. Read on.

READ MORE →

Add new comment

## RE-OCCUPY JAY STREET!!
Tue, 12/13/2011 - 11:28am

MTA: Money Thrown Away                                                          5/20/15 10:07 AM

**2010**

More stories beating the drum about the Jay Street "eyesore", leading up to the building sale;

370 Jay Street Ignored

**Give us MTA's Jay St. eyesore!**

**Lhota's comments on 370 Jay MTA**

**Finally Parting w/ unused Building**

Why does MTA continue to rent 370 jay street? ( note: nowhere does the author state that the rent is one dollar a year)

**POLs: Lease 370 Jay**

Jay

**St. paint chip disaster** MTA

**finally gives up Jay St. ghost**

347 Madison Avenue stories

**MTA looking to sell 347 Madison**

**MTA could sell buildings**

**MTA's home for sale**

This story was written before the April 25 2012 vote by the MTA board to give away 370 Jay St, a very valuable public asset. We are leaving the story up to remind everyone of the clueless way in which the MTA wastes money.



370 Jay Street is an office building that the MTA leases from the city for a dollar a year. That's right, ONE DOLLAR! Right now it is the site of a massive misinformation campaign by the MTA and much of the New York media. The building is supposed to be "deteriorated" and "an eyesore." The facts are quite different....

READ MORE

## Another reason not to sell the 370 Jay Street building

Thu, 12/22/2011 - 3:36pm
This story was written before the April 25 2012 MTA board vote to give away the 370 Jay St building, a very valuable public asset. We have left this story up as a reminder of the clueless way in which the MTA wastes money.

When the Building at 370 Jay Street was built in 1950, it was "custom built" to be the "Transportation Building". Because of this there are many interesting features built into the design of the building. For example...most people don't know that the majority of the first and second floor, and even a few of the subfloors, of the building are a huge revenue collection facility! This is evidenced by two huge garage doors facing Willoughby Street. This outside entrance is for armored trucks to drop off revenue that must be collected at street level. But underneath the building there are many special tunnels that were built for...the MONEY TRAIN! Yes, that's right! The infamous "money train!"

MTA: Money Thrown Away                                                                3/20/15 10.07 AM





## MTA Real Estate for Sale?

Fri, 02/17/2012 - 12:32pm

After reading a few of these stories it becomes obvious that the MTA's real estate plan is completely out of control. They routinely rent or lease spaces, from private entities, that they don't need. At the same time they have hundreds of thousands of square feet that they own, that are not used, abandoned and left to fall into neglect. This plan may be good for the private real estate entities that rent to the MTA but it is a disaster for the riders and taxpayers that must foot the bill.





Add new comment





# NY MTA infiltrated by the Mob - lost tens of millions to organized crime

September 16, 2004
By Peter Samuel

New York's premier transit and toll agency the

> 2 Broadway, the MTA building whose renovation was managed by mobster Frederick Contini and has cost $450m versus a forecast $145m.

2 Broadway, the MTA building whose renovation was managed by mobster Frederick Contini and has cost $450m versus a forecast $145m.

> MTA's reputation in New York has also been damaged by an accounting scheme which made its finances look bleaker when it was going for toll and fare increases - cartoon by Dom Nunziato in Queenspress.

MTA's reputation in New York has also been damaged by an accounting scheme which made its finances look bleaker when it was going for toll and fare increases - cartoon by Dom Nunziato in Queenspress.

**We make commercial fleet tolling painless.**

* Decrease support call volume
* Guaranteed payments
* Aggregated Dispute Processing
* Automated vehicle/plate updates



**BESTPASS**
Own the Road. For Less.



Ad

Metropolitan Transportation Authority (MTA) has lost tens of millions of dollars to the Mob in a slowly unfolding scandal over mismanagement of its new headquarters office building at 2 Broadway. Federal prosecutors yesterday released an indictment for racketeering against Edward Garafola, a leading figure in

the public purse violated that duty by pocketing hundreds of thousands of dollars to allow corrupt contractors to steal millions. While we may never know exactly how much money was stolen from the MTA, the investigation revealed that one plumbing contractor alone, generated approximately $9.3 million in fraudulent labor charges, inflated invoices for materials, and cash generating schemes to renovate his house, purchase jewelry, furniture and stock and evade taxes."

Figliola plumbing, a Mob favored contractor got away with billing the MTA as if it paid laborers on the 2 Broadway job and on other jobs for MTA $65/hour when company records showed actual pay was in the range $8 to $20/hr. There was also continuing money laundering, inflation of invoices and other schemes to bilk the agency.

Mogenthau's indictment said: "The investigation revealed that the crimes committed by the Figliolas and their company were made possible because the MTA officials charged with overseeing and policing of the contracts were bribed and rewarded to permit the fraudulent labor charges, inflated materials invoices, false filings and the other cash generating schemes. Howard Weissman, the MTA's Director of Facility Operation and Support was the principal official involved. The investigation revealed that he was bribed with cash payments, jewelry and free trips totaling approximately $550,000. Ronald Allan, the MTA's Facilities Manager and Weissman's chief advisor, received bribes totaling approximately $65,000. MTA building manager Gary Weissbard received benefits and rewards totaling approximately $10,000."

They are charged with enterprise corruption, grand larceny, bribe taking, falsification of records, fraud, and obstruction.

No staff of the Bridges and Tunnels division of the MTA, or Triborough Bridge and Tunnel Authority as it is legally constituted, have been accused of any involvement in the Contini-led wrongdoing.

The MTA's reputation has been further sullied in the past year by charges that it rigged its books by moving expenditures between years in order to present a stronger justification to the public for toll and fare increases.

BACKGROUND: MTA's Bridges and Tunnels division runs the highest grossing toll operation in the US. The facilities include the Verrazano Narrows Bridge, the Brooklyn Battery Tunnel, the Queens Midtown Tunnel, the Bronx Whitestone Bridge, the Triborough Bridge, the Throgs Neck Bridge and several other smaller crossings. The toll operation is highly profitable and the division is regarded as a cash cow for helping bail out the transit side. Last year the MTA raised $1,022m in tolls and $3206m in transit fares for total revenues of $4553m. It had costs of $7588m due to massive losses on transit, and received subsidies of $2384m from taxpayers.

A New York state agency MTA owns 8,500 rail transit cars, and 5,000 buses, employs 64,000 people, supports 7.8m transit trips daily, and does 800k toll collections per day. Its board of directors are nominated by the state governor, some on the advice of mayors and county officials, and have to be confirmed by the state Senate. MTA's activities are entirely "downstate" - in the New York City metro area. TOLLROADSnews 2004-09 16

the Gambino Mafia group in which then MTA project manager Frederick Contini admits to having been a long time Gambino crime family "associate" and to having managed the 2 Broadway project on behalf of the Mob family while MTA project manager. Contini has pled guilty to making massive weekly "tribute" payments to the Mob, engaging in rigged contracts, and committing extortion while managing the MTA project.

Contini who is now cooperating with the feds is expected to testify that he made weekly "tribute" payments to his Mafia bosses of $12,500 throughout the MTA building renovation project. Contini is charged with a variety of other crimes.

According to the federal indictment revealed yesterday Contini has confessed to having done a string of building redevelopments in New York City and northern New Jersey on behalf of the Mafia since 1989, while purporting to work for the building owners.

A Laborers International Union official Junior Campbell and Richard Calabro, a brother in law of Garafola were indicted along with Garafola on labor racketeering charges on the 2 Broadway job. Garafola is already facing charges of murder and attempted murder. He is charged with murdering a Staten Island Businessman in 1989 and with an aborted plot to kill the Mafia turncoat Salvatore Gravano whose testimony for the government put Mafia chief John Gotti in jail for life.

Contini has already been convicted of fraud in the 2 Broadway case. He was arrested once after an incident at a restaurant in which he allegedly smashed a glass in the face of another patron. He also has drunk driving convictions including one in the Port Authority's Holland Tunnel when he wrecked his car driving into the curb in the tunnel.

Contini first got involved in 2 Broadway when he was hired by the building's owner Tapir (Tommy) Sapir. After Contini was put in charge of managing the renovation of the building on behalf of its recently signed longterm tenant, the MTA, Sapir turned hostile to Contini and fired him. He told MTA officials Contini was a "thief." The MTA responded by putting Contini on their payroll as their manager for the 2 Broadway job.

**Contini got award in 1999**

Early in the project Contini was named "1999 Developer of the Year" for his supposed outstanding management of the project at the MTA. (Amazingly Contini failed to get an IBTTA Toll Excellence Award that year. He can't have applied!)

Originally quoted to cost $145m the 2 Broadway renovation cost the MTA over $450m under Contini. He lost his job with the MTA early 2002, when one of his many malfeasances was exposed by audit staff at the authority, and the larger criminal scheme began to emerge. Then in Dec 2002 a longtime MTA senior officer and head of facilities operations Howard Weissman and his deputy were suddenly fired. A year later they and another MTA officer were hit with a 116 count indictment, which says quoting the New York County District Attorney Robert Morgenthau "(they) were engaged in a criminal enterprise, denominated the 'Figliola Group,' for the purpose of stealing millions of dollars from the MTA through a variety of schemes, including inflating invoices for materials, violating prevailing wage requirements, money laundering, falsifying and forging business records filed with the MTA and evading taxes... The officials whose duty it was to protect

Case 1:15-cv-01481-ENV-LB   Document 7   Filed 06/26/15   Page 69 of 78 PageID #: 117

Addresses, Defendants 15-cv-1481(ENV/LB)
New York City Transit Authority, 130 Livingston Street
 Brooklyn NY 11201
Kristen Nolan 130 Livingston Street
Brooklyn, NY 11201
Leonard Akselrod 2 Broadway
 New York, NY 10004
NYP Holdings, Inc. dab New York Post 1211 Avenue of the Americas
New York,  NY 10036
Kathianne Boniello 1211 Avenue of the Americas
New York, NY 10036

15 - CV - 1481 (ENV-LB)          JUNE 29, 2015

☐ ORIGINAL

BRIAN BURKE PRO SE PLAINTIFF
145 EAST 23RD STREET #4R
NEW YORK, NY 10010

TO THE COURT!
           TO THE HONORABLE COURT, ATTACHED IS PAGES
39, 40, 41, 42, 43, 44 OF AMENDED COMPLAINT FILED
ON 06/26/15 AND AFFIRMATION OF SERVICE
TO DEFENDANT NYCTA FOR THE SAME PAGES

OF NEW YORK
EASTERN DISTRICT
U.S. DISTRICT COURT

2015 JUN 29 PM 4:14

FILED
CLERK

and careers of operating Civil Servants, not to
mention the public. We know why the Authority
retaliated against this whistleblower but why
endanger the public? Primarily two reasons (1)
There can be no witnesses. Conductors and Train
Operators can, and have been terminated for
allowing unauthorized personnel in the cab, as
anyone in the cab is a potential distraction and
presumptively unsafe. (2) No recordings. Operating
personnel are affirmatively barred from using any
"electronic device" while operating. Thus to record
any attack while operating would itself be a
termination offense. So we now have the infamous he
said/she said dissonance. If the harassing
supervisors, acting on management
direction/protection, told the truth they would be
fired on the spot. So they 'testily'. Let us go to
management's version of what happened (see again,
by reference, WCB transcripts possessed by
defendant). Ms. Nolan on Friday April 11, 2014 at a

PERB settlement conference was told that 3

Affidavits she submitted may have been suborned.

Apparently she agreed as on the following workday

she called in her favors with management and set

about successfully separating Complainant from his

livelihood and into treatment for medical maladies

caused by said campaign of terror. Please see again

'IG Letter'. The Subornation of the 3 Affidavits is

being investigated by the Kings County DA, in

cooperation with TWU Local 100. The 3 TSS's that

terrorized the Plaintiff on Tuesday, April, 15,

2014 testilied at several WBC hearings in 2014.

They lied not only about not harassing or

assaulting the injured party but on provable

deliberate misstatements. For example, all three

stated that they were standing 3 feet away while

contradictorily stating they were viewing the track

and approaching signals. At 3 feet away the view is

blocked by the bulkhead, as the suborning attorney

did not know. One TSS stated he was 3 inches away

(correct) and then cued by NYCTA counsel changed

that to the "3 feet" perjury. In an attempt to

mitigate the crime, one TSS stated, under oath,

that Petitioner, or in fact any Train Operator, was

allowed to expel or bar them from the operating

cab. This was brutally contradicted by the TSS that

endangered the complainant (and the public) the

most by the ferocity of his attack, TSS Daley. So

why would the 5 TSS's perform management's bidding

and instruction to harass and terrorize a Motorman

while he is operating a train? Consideration. The

next promotion from TSS is Deputy Superintendent, a

managing title not subject to Civil Service law or

procedure. No team player, no promotion. Of course,

TSS's can themselves be harassed by management,

even if they do not seek promotion, via job

assignments etc., or even be demoted if still on

their unlawful 2 year promotion (see IG Letter).

## NORMAL PROCEDURE

A neutral fact finding body may ask, "What is the procedure if a complaint, deliberately incorrect or not, is received by management?" Occasionally, safety complaints are made by passengers or employees. Depending on the nature of the complaint, it is either ignored or investigated by one's assigned TSS. Every TSS has aprox 30 hourlies assigned to them and any investigation regarding those thirty is put to them. But not in this case. Why? Because Mr. Greaves, Petitioner's assigned TSS, would not perform the necessary terroristic hostile acts. Simple. TSS Greaves was available and on the clock on both April 14 and 15th 2014, the dates of the concerted adverse job actions, and was not contacted by management to investigate. TSS Greaves was called by the Department of Law to testify at a WCB hearing and when the Authority Counsel saw his testimony would be inculpatory to their case he was sent home and an adjournment was requested. When are complaints not even investigated? When they involve allegations of unsafe train operation by someone who

1   never saw the person operate, such as the malicious

2   complaint by Ms. Nolan. There is a procedure to catch

3

4   safety violations by operating personnel, complaint or

5   no complaint, malicious or not. They are called

6

7   "Efficiency Tests" and are regularly performed to catch

8   unsafe operation. Petitioner has a 24 page directive

9   which will be entered as an exhibit if Defendant does

10

11   not acknowledge their violation of this procedure.

12   Initially, all 5 TSSs comported with the standard

13   operating procedure (SOP) in observing Petitioner in

14

15   entering and stopping at boarding stations. They

16   acknowledged observing Complainant, as always, in

17

18   compliance with all safety bulletins and rules. The SOP

19   is to then wait for the next train and do an identical

20

21   observation. Instead, in violation of over a 100 years

22   of precedent regarding safe train operation, all five,

23

24   over the course of two days, in an escalating manor,

25   instituted their 'hostile workplace' on this bizarre

26   flimsy 'pretext' immediately after it was proven false.

27

28   There was no legitimate reason for any of the 5 to

AMENDED COMPLAINT AND AFFIRMATION

JURY TRIAL DEMAND - 43

enter the operating cab and interfere with safe train operation, endangering the Public, contractors and employees. Mr. Akselrod was asked, under oath, if he ever ordered similar treatment on another employee. He answered in the negative. Management would love to expand on this newfound 'management prerogative' to rid themselves of all actual, or potential, whistleblowers and if it endangers millions of passengers and tens of thousands of employees, so what? "By any means necessary", "Do as thou wilt" and finally, "Power corrupts….[32]". Petitioner pleads to this neutral fact finding body to end this criminality.

## PREDICATE ACTS

As to the predicate acts for federal and state RICO, please review attached exhibit 3 "MTAMONEYTHROWNAWAY". This information was disclosed to the Authority at previous 50-h hearing. Also see allegations of Obstruction of Justice regarding the river of Subornation. "MTAMONEYTHROWNAWAY" involves

---

[32] "Power tends to corrupt and absolute power corrupts absolutely." John Dalberg-Acton, 1st Baron Acton

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2015 JUN 29  PM 2: 16

RECEIVED
CLAIMS PROCESSING

——————————————————————— x

BRIAN BURKE

                              Plaintiff,                    Affirmation of Service

               -against-
NEW YORK CITY TRANSIT AUTHORITY, NYP
HOLDINGS INC., KRISTEN NOLAN, LEONARD            15    CV 1481    ( ENV )
AKSELROD, JOHN/JANE DOE, ET AL.

                              Defendant.
——————————————————————— x


I, BRIAN BURKE _____, declare under penalty of perjury that I have

served a copy of the attached PAGES 39,40,41,42,43,43 FROM AMENDED COMPLAINT

upon DANIEL CHIU, ESQ, COUNSEL FOR NYCTA

whose address is: 130 LIVINGSTON STREET, FLOOR 12 BROOKLYN, NY 11201

_____


Dated: 6/29/15
       BROOKLYN    , New York

                                        _____
                                        Signature

                                        145 EAST 23RD STREET APT 4R
                                        Address

                                        NEW YORK, NY 10010
                                        City, State, Zip Code

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

☆FILED☆

2015 JUN 26  PM 8: 28

CLERK
U.S. DISTRICT COURT

———————————————————— X

Brian Burke

                    Plaintiff,                    Affirmation of Service

          -against-

New York City Transit Authority, NYP Holdings, Inc.,
Kristen Nolan, esq., Leonard Akselrod, Kathianne        15____ CV 1481_____ ( ENV )
Boniello, John/Jane Doe, Et Al.

                    Defendant.

———————————————————— X


I, BRIAN BURKE_____ , declare under penalty of perjury that I have

served a copy of the attached AMENDED COMPLAINT AND AFFIRMATION AND EXHIBITS_____

upon NYCTA ATTORNEY DANIEL CHIU, ESQ. BY CERTIFIED USPS MAIL # 9505 5000 5177 000210

whose address is: 130 LIVINGSTON STREET FLOOR 12, BROOKLYN, NEW YORK 11201_____


————————————————————————————————————


Dated: 6/15/15_____
        NEW YORK____ , New York

                                        _____
                                        Signature

                                        145 EAST 23RD STREET, #4R____
                                        Address

                                        NEW YORK, NY 10010____
                                        City, State, Zip Code